# EXHIBIT 8

# MorrisonCohen LLP

Howard S. Wolfson
Partner
(212) 735-8872
hwolfson@morrisoncohen.com

June 4, 2008

**VIA E-MAIL AND FEDERAL EXPRESS**

Dana B. Klinges, Esq.
Wolf, Block, Schorr and Solis-Cohen LLP
1650 Arch Street, 2nd Floor
Philadelphia, PA  19103-2097

Re:    CDDV/CDP and Hornell

Dear Dana:

Hornell Brewing Company, Inc. ("Hornell") has asked me to respond to your letters dated April 1 and April 25, 2008.

First, my understanding is that Hornell offered the 16 and 20 oz. PET new product lines to CDDV/CDP on an exclusive basis on the same terms as it has offered these new product lines to other distributors. I further understand that John Taglienti, acting on behalf of both CDDV and CDP, advised Hornell that CDDV/CDP would not accept the new product lines on that basis. Given Mr. Taglienti's statement that CDDV/CDP are "not interested in selling" these new product lines on the terms offered, pursuant to Paragraph 7 of the November 14, 2006 Letter Agreement ("Letter Agreement") these product lines became non-exclusive. Accordingly, the sale of these product lines in your clients' territory would not be in breach of any agreement between the parties. I do understand, however, that Hornell remains willing to make the new product lines available to CDDV/CDP on a non-exclusive basis.

Second, as you know, there is nothing in the Letter Agreement (or in the parties' Distributor Agreements) that obligates Hornell to offer products to CDDV/CDP at prices that result in a specified gross profit margin. Moreover, I understand that Harold and Don had agreed in 2007 to the sale of 16 oz. glass bottles at a similar profit margin in the grocery channel. The 16 oz. PET is intended to replace the 16 oz. glass bottle and, therefore, Hornell's expectation was that CDDV/CDP would handle this product on a basis similar to the manner in which 16 oz. glass had been handled in 2007. In any event, Hornell has accepted CDDV/CDP's business decision not to carry the new product lines on the terms offered and will instead do its best to make alternate arrangements to make these products available to consumers in CDDV/CDP's territory.

Third, even assuming arguendo 16 oz. PET was an exclusive product as you argue, our understanding of the intent of the Letter Agreement is that sales of 16 oz. products -- glass and any plastic product that replaces it -- are expressly permitted to BJ's and other club

#542937 v20 \16932 \003

# MorrisonCohen<sub>LLP</sub>

Dana B. Klinges, Esq.
June 4, 2008
Page 2

---

stores. Paragraph 3 of the Letter Agreement specifically authorizes sales of 16 oz. products to various accounts, including club stores.

Fourth, as to Mobil/Exxon, I understand that Hornell specifically offered CDDV/CDP the opportunity to service these accounts with 20 oz. PET and that John Taglienti notified Hornell that because Hornell's pricing to these accounts does not meet CDDV/CDP's alleged margin requirements, CDDV/CDP was declining to sell the new 20 oz. PET products to these accounts. I am advised that Hornell's other DSD distributors have agreed to follow the pricing offered by Hornell to these accounts. As such, Hornell has been forced to market the 20 oz. product to Mobil/Exxon through an alternate delivery service. If CDDV/CDP decides to follow Hornell's agreed pricing for these accounts, Hornell is prepared to discontinue the alternate delivery service.

If you need to discuss this matter further, please do not hesitate to contact me.

Sincerely,

Howard S. Wolfson

cc: Martin B. Cunningham, Esq.

#542937 v15 \16932 \003