Exhibit D

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (hereinafter the "Agreement") is made by and between Canada Dry Delaware Valley Bottling Company ("CDDV"), Canada Dry Potomac Corp. ("CDP") (collectively, the "Claimants") and Hornell Brewing Company, Inc. d/b/a Ferolito, Vultaggio & Sons ("Hornell"). This Agreement shall be deemed entered into as of the date of the signature of the last party or party representative to sign.

**WHEREAS,** Hornell executed an exclusive distribution agreement with CDDV on March 17, 1997, granting CDDV exclusive distribution rights in Bucks, Chester, Delaware, Montgomery and Philadelphia Counties in Pennsylvania (the "Pennsylvania Agreement");

**WHEREAS,** Hornell executed an exclusive distribution agreement with CDDV on March 17, 1997, granting CDDV exclusive distribution rights in Atlantic, Burlington, Camden, Cape May, Cumberland, Gloucester and Salem Counties in New Jersey, and Kent, New Castle and Sussex Counties in Delaware (the "New Jersey Agreement," referred to with the Pennsylvania Agreement as the "CDDV Agreements");

**WHEREAS,** Hornell executed an exclusive distribution agreement with CDP on December 23, 1998, granting CDP exclusive distribution rights in the District of Columbia and Anne Arundel, Baltimore, Baltimore City, Carroll, Frederick, Howard, Montgomery, and Prince George's Counties in Maryland (the "CDP Agreement");

**WHEREAS,** CDDV and CDP commenced an arbitration against Hornell by causing a demand for arbitration to be delivered to the American Arbitration Association on June 22, 2005, captioned *Canada Dry Delaware Valley Bottling Co. and Canada Dry Potomac Corp. v. Hornell Brewing Co., Inc. d/b/a/ Ferolito, Vultaggio & Sons,* AAA Case Number 13 181 01425 05 (the "Action");

WHEREAS, Hornell disputes the claims asserted by CDDV and CDP in the Action and has asserted defenses and a counterclaim; and

WHEREAS, CDDV, CDP and Hornell (collectively, the "Parties") desire to settle all claims that were or could have been asserted in the Action without incurring further litigation costs;

NOW, THEREFORE, in consideration of the mutual obligations and undertakings set forth herein, and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, and intending to be legally bound hereby, the undersigned hereby to agree as follows:

1.  **Amendments to the Distribution Agreements:** The CDDV Agreements and the CDP Agreement are modified by the amendments set forth in Exhibit A and B (the "Amendments"), which will be executed simultaneously with the execution of this Agreement. The Amendments, along with the CDDV Agreements and the CDP Agreement which are amended thereby, are incorporated into and made part of this Agreement.

2.  **Consent to Award:** The parties agree to seek the Arbitration Panel's approval to conclude this Action by jointly submitting a copy of the Agreement to the Arbitration Panel as an attachment to a proposed Consent Award.

3.  **Confirmation:** Any party may file a petition to confirm the Consent Award. The Parties agree that the amount in controversy in the Action exceeds the sum or value of $75,000, exclusive of interest and costs, and that the preferred forum for confirmation is the United States District Court for the Southern District of New York. Should that court decline jurisdiction for any reason, the Consent Award may be confirmed in the Supreme Court of New York, New York County. The Parties agree not to object to such a petition on any ground, including but not

limited to jurisdiction, and the Parties further agree not to file a petition to vacate the Consent Award.

4. **Mutual Releases:** The Parties for good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, for themselves and each of their respective past, present and future officers, employees, directors, shareholders, agents, representatives, affiliates, partners, subsidiaries, successors and assigns, do hereby remise, release and discharge each other and hold each other and their respective past, present and future officers, employees, directors, shareholders, agents, representatives, affiliates, partners, subsidiaries, successors and assigns of any of them harmless for any and all claims relating to the CDDV Agreements and/or CDP Agreement that were or could have been asserted in the Action.

5. **Confidentiality:** The Parties agree that all documents collected during the course of discovery in the Action shall be kept confidential and shall not be disclosed or otherwise disseminated to any other person(s) or individual(s), except as the parties may be required by Order of Court or other governmental agency, and/or as the parties have agreed in the Confidentiality Agreement in this matter which, by its terms, survives the conclusion of the Action. Any party making any disclosure of evidence or documents permitted by the first sentence of this paragraph must provide to the opposing party's counsel notice that the evidence or documents will be disclosed at least five (5) business days before the date of any such disclosure. The parties further agree that the terms and conditions of this Agreement shall be kept confidential and shall not be disclosed or otherwise disseminated to any other person(s) or individual(s) except as follows: (1) as may be necessary to seek confirmation or enforcement of this Agreement, (2) as the parties may be required by Order of Court or other governmental agency, and/or (3) as may be needed by the parties' agents and professional advisors, including their auditors, accountants, and attorneys. Any party making any disclosure to its agents and

professional advisors, including its auditors, accountants, and attorneys, as permitted by this paragraph, shall advise any such person or entity that the disclosure is subject to this confidentiality provision and shall obtain reasonable assurances from any such person or entity that it will not disclose any information covered by this confidentiality provision. It is further understood and agreed that the parties and their respective counsel shall not in any way publicize or give comment to any third parties, aside from those listed above, including any news or communication media (including, but not limited to, newspapers, magazines, radio, television, or Internet) regarding the terms and/or conditions of this Agreement or the evidence, claims or contentions regarding the Action.

6. **Attorneys' Fees and Costs:** The Parties agree that the costs of litigation and attorneys' fees in the Action shall be borne by the respective party incurring such costs or attorneys' fees and that the arbitration costs shall be paid 50% by the Claimants and 50% by the Respondent.

7. **Preparation of the Agreement and Construction:** Each Party has cooperated in the drafting and preparation of this Agreement. Therefore, the Agreement shall not be construed against any Party.

8. **Final Understanding:** The Parties agree that the CDDV Agreements and the CDP Agreement remain in full force and effect according to their terms as amended by this Agreement and the Amendments. This writing constitutes the complete, final and entire understanding of the Parties hereto with respect to all matters relating to this Agreement. Other than the terms of this Agreement, terms of the CDDV Agreements and the CDP Agreement which are not modified or amended by the terms of this Agreement, and the Amendments, there are no other terms, covenants, conditions or representations.

9. **Amendment:** This Agreement may not be modified or changed orally, and may be amended only by an agreement in writing signed by the Parties.

10. **Claims Arising out of the Enforcement of this Agreement:** The Parties do not release each other from any claims, counterclaims, demands, causes of action and rights of action arising out of the enforcement of the terms of this Agreement or the Consent Award as confirmed by a court of competent jurisdiction. Prior to commencing any action relating to the enforcement of this Agreement or the Consent Award as confirmed, the party alleging breach must provide notice to the party alleged to have breached, specifying in sufficient detail the allegation and the basis therefor, and must provide no less than 60 days to cure the alleged breach.

11. **Notices:** Any notice or other transmission of information required under the provisions of this Agreement shall be made by overnight courier service, addressed as follows:

**For CDDV and/or CDP:**

Canada Dry Delaware Valley Bottling Company, and/or
Canada Dry Potomac Corp.
8275 U.S. Route 130, Pennsauken, New Jersey 08110
Attn: Jeffrey Honickman

-and-

Dana B. Klinges, Esquire
Wolf, Block, Schorr & Solis-Cohen, LLP
1650 Arch Street, 22nd Floor
Philadelphia, PA 19103

**For Hornell Brewing Company, Inc.:**

Hornell Brewing Company, Inc.
5 Dakota Drive, Lake Success
New York, NY 11042
Attn: _____

-and-

Howard Wolfson, Esquire

      Morrison Cohen LLP
      909 Third Avenue
      New York, NY 10022

12. **Representations and Warranties:** The Parties further represent and warrant that:

    a. they have not made any promise, representation or warranty, express or implied, not contained in this Agreement concerning the subject matter of this Agreement and the Parties acknowledge that they have not executed this Agreement in reliance upon any such promise, representation or warranty not contained in this Agreement;

    b. they have not assigned the claims asserted in the Action to any other entity; and

    c. each of the signatories for the Parties further represents that he or she is fully authorized to enter and execute this Agreement for and on behalf of the entity that he or she represents and that such entity has duly authorized him or her to sign on its behalf, as reflected on the attached signature page(s).

13. **Choice of Law and Venue:** The parties agree that this Agreement is governed by the laws of the State of New York. Notwithstanding the arbitration provisions in the CDDV Agreements and the CDP Agreement, the venue for any action arising out of the interpretation, enforcement or a breach of this Agreement or the Consent Award as confirmed shall be the United States District Court for the Southern District of New York or, if the Consent Award is confirmed in state court pursuant to paragraph 3 above, the Supreme Court of New York, New York County.

14. **Counterparts:** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original. The executed

signature pages from each counterpart may be joined together and attached to one such original, which shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be duly executed on the last day and year written below:

**Canada Dry Delaware Valley Bottling Company,
and
Canada Dry Potomac Corp.**

_____

By: Harold Honickman, Chairman

Date: November ____, 2006

**Hornell Brewing Co., Inc.**

_____

By: Don Vultaggio,

Date: November ____, 2006

Case 1:07-cv-08037-SHS    Document 15-5    Filed 07/24/2008    Page 9 of 20

Exhibit E

Once the Panel determines that the Letter Agreement and accompanying Settlement Agreement set forth the terms of the parties' settlement and that no material terms were left open for future negotiation or drafting, the only appropriate relief is the entry of a Consent Award adopting these agreements. That will conclude this arbitration. Thereafter, if Claimants genuinely believe that the Letter Agreement is ambiguous and that their nonsensical interpretation of certain of its terms has merit, they may commence a new arbitration if Hornell allegedly breaches the amended Distributor Agreements. By the parties' agreement, however, the only issue that is before the Panel on this motion is whether a settlement was reached -- not whether the parties' conduct in the future may or may not violate the terms of their amended Distributor Agreements.

On this score, we respectfully submit that this is not a close motion. The Letter Agreement drafted by Claimants' own counsel[1] left no business terms "open" nor contemplated the drafting of a more formal document to replace it. It contemplated only an accompanying Settlement Agreement setting forth the "legal terms" -- the typical "bells and whistles" -- all of which were agreed to when, on November 20, 2006, Hornell approved the draft prepared by Claimants.[2] Under settled New York law, these documents may be read together to evidence a binding contract.

---

[1] Claimants now argue that although Mr. Gantman is an experienced attorney -- indeed he previously was with the Wolf Block law firm that represents them -- he is not their in-house counsel but the Executive Vice President of one of their affiliates, Beverage Distribution Center, Inc. Prior to the beginning of the hearing, Hornell's counsel invoked the rule. Thereafter, only a corporate representative for each party and in-house counsel were permitted to attend the hearings along with outside counsel during testimony. Mr. Gantman is, according to his affidavit, neither a representative of the Claimants nor their in-house counsel.

[2] Claimants' counsel only provided Hornell's counsel with one draft of the Settlement Agreement, which Hornell's counsel agreed to by letter dated November 20, 2006.

#651067 v2 \16932 \003

Exhibit F

Having considered the submissions and arguments of counsel, the Arbitrators find the parties are bound by:

1. The signed Letter Agreement, dated November 14, 2006;

2. The signed three paragraph handwritten document, dated November 14, 2006; and

3. Except for (a) Paragraph 1 (Amendments to the Distribution Agreement) and (b) "and the Amendments" in the sixth line of paragraph 8 (Final Understanding), all of the remaining provisions of the unsigned "Settlement Agreement and Mutual Release", dated November __, 2006.

For the Panel                                              Dated: February 8, 2007

_/s/ Eugene S. Ginsberg_
Eugene S. Ginsberg, Chair

D533470v1

Exhibit G



1650 Arch Street, 22nd Floor, Philadelphia, PA 19103-2097
Tel: (215) 977-2000 ■ Fax: (215) 977-2740 ■ www.WolfBlock.com

Dana B. Klinges
Direct Dial: (215) 977-2632
Direct Fax: (215) 405-2632
E-mail:    dklinges@wolfblock.com

June 8, 2007

**VIA E-MAIL AND REGULAR MAIL**

Eugene S. Ginsberg, Esquire
Law Offices of Eugene S. Ginsberg
300 Garden City Plaza
Garden City, NY 11530

Hon. E. Leo Milonas
Pillsbury Winthrop Shaw Pittman, LLP
1540 Broadway
New York, NY 10036-4039

Hon. Walter M. Schackman
David & Gilbert LLP
1740 Broadway
New York, NY 10019

Re:   **CDDV and CDP v. Hornell Brewing Co., Inc.,
        AAA No. 13 181 M 01425 05**

Dear Panel Members:

Since the entry of the Panel's Order on February 8, 2007 (the "Order"), the parties have engaged in negotiations on certain business and legal issues in an effort to resolve this matter once and for all. A significant amount of time has now passed and no progress has been made toward that end. At this point we think it would be best for the parties to submit a consent award to the Panel based on the Order.

We are concerned, however, about the lack of integration between the three settlement documents enforced by the Order. It is clear that the Panel intended to strike any references to the restated business terms contained in Claimants' draft amendment documents and that the Panel intended, instead, to enforce the business terms stated in the November 14, 2006 letter agreement and the handwritten amendment document. In so doing, however, the Panel created three stand-alone documents.

The first paragraph of our draft settlement agreement had incorporated draft documents that amended the original distribution agreements:

> 1.    **Amendments to the Distribution Agreements:**   The CDDV Agreements and the CDP Agreement are modified by the

PHL:5624544.3/CAN039-151063

Boston, MA ■ Cherry Hill, NJ ■ Harrisburg, PA ■ New York, NY ■ Norristown, PA ■ Philadelphia, PA ■ Roseland, NJ ■ Wilmington, DE

WolfBlock Government Relations - Harrisburg, PA ■ WolfBlock Public Strategies - Boston, MA and Washington, DC

Wolf, Block, Schorr and Solis-Cohen LLP, a Pennsylvania Limited Liability Partnership

Eugene S. Ginsberg, Esquire
E. Leo Milonas, Esquire
Hon. Walter M. Schackman, Esquire
June 8, 2007
Page 2

>     amendments set forth in Exhibit A and B (the "Amendments"), which will be executed simultaneously with the execution of this Agreement. The Amendments, along with the CDDV Agreements and the CDP Agreement which are amended thereby, are incorporated into and made part of this Agreement.

The Panel's Order deletes this paragraph without providing alternative language incorporating the business terms of the settlement or the original contract terms. Also, by deleting Paragraph 1 in its entirety, the Panel has inadvertently made the second sentence of Paragraph 8 simply untrue. Paragraph 8 of Claimants' original draft settlement agreement stated:

>     8.    **Final Understanding:** The Parties agree that the CDDV Agreements and the CDP Agreement remain in full force and effect according to their terms as amended by this Agreement and the Amendments. *This writing constitutes the complete, final and entire understanding of the Parties hereto with respect to all matters relating to this Agreement.* Other than the terms of this Agreement, terms of the CDDV Agreements and the CDP Agreement which are not modified or amended by the terms of this Agreement, and the Amendments, there are no other terms, covenants, conditions or representations.

The Order deletes one of the two references (but not the other) to the draft amendment documents, but does not provide alternative language integrating all of the parties' business and legal terms. Without integration and incorporation of the other documents, the Settlement Agreement is not the complete, final and entire understanding of the parties; the original agreements and the letter agreement are, of course, also part of that understanding.

In short, the parties are left with a settlement agreement that does not contain or incorporate any of the parties' key business settlement terms. Further, the business terms contained in the letter agreement and handwritten documents make no sense without being linked to the terms they amend — they are merely exceptions without rules. Thus, it is critical that all of the parties' agreements be integrated.

Claimants foresee several problems created by the lack of integration between the three settlement documents. For example, the settlement agreement contains a confidentiality provision that applies to the terms and conditions of "this agreement." This was intended to apply to all of the settlement terms agreed to by the parties. As it stands now, however, the terms of the letter agreement and handwritten amendments (which contain the key business

Eugene S. Ginsberg, Esquire
E. Leo Milonas, Esquire
Hon. Walter M. Schackman, Esquire
June 8, 2007
Page 3

terms) are not confidential because they are not incorporated. By way of further example, the letter agreement and its handwritten amendments provide for notice and an opportunity to cure in the event of transshipment or other breaches. The settlement agreement sets forth the manner by which "notice or other transmission of information required under the provisions of this Agreement" are to be given. As it stands now, this notice provision in the settlement agreement does not apply to the provisions of the letter agreement and handwritten amendments. Perhaps of greatest concern, the provision in the settlement agreement by which the settlement agreement is to be confirmed by a court arguably does not apply to the business terms set forth in the letter agreement despite the parties' stated intention in paragraph 12 of the letter agreement that this be the case.

Even though the Panel chose not to enforce the proposed amendment documents drafted by Claimants, there is no question that the parties intended to amend – and not replace – the distribution agreements. By incorporating the distribution agreements into the settlement document, it becomes clear that exclusivity (as expressed in the distribution agreements) is to be modified by the terms and conditions in the settlement documents. This concept, which was clear in Claimants draft settlement agreement, was obscured when paragraph 1 was stricken.

On April 30, 2007, Claimants proposed to Hornell amendments to paragraphs 1, 8 and 11 of the settlement agreement to address these issues. With respect to the first paragraph, which was deleted by the Order, Claimants proposed reinstating that paragraph but replacing the references to the draft amendments with references to the letter agreement and handwritten amendments, as follows:

> 1.  **Amendments to the Distribution Agreements:** The November 14, 2006 Letter Agreement and its handwritten amendments (the "Letter Agreement"), along with the CDDV Agreements and the CDP Agreement which are amended thereby, are incorporated into and made part of this Agreement. A copy of the Letter Agreement and its handwritten amendments is attached as Exhibit A.

Claimants have also proposed changing paragraph 8 of the settlement agreement to remove the remaining reference to the "Amendments" and to replace it with a reference to the "Letter Agreement," defined above to include the letter agreement and its handwritten amendments. A blackline comparing what Claimants propose to what has been enforced by the Panel is as follows:

> 8.  **Final Understanding:** The Parties agree that the CDDV Agreements and the CDP Agreement remain in full force and

Eugene S. Ginsberg, Esquire
E. Leo Milonas, Esquire
Hon. Walter M. Schackman, Esquire
June 8, 2007
Page 4

> effect according to their terms as amended by this Agreement ~~and the Amendments. This writing constitutes.~~ <u>The CDDV Agreements, the CDP Agreement, this writing, and the appended and incorporated Letter Agreement constitute</u> the complete, final and entire understanding of the Parties hereto with respect to all matters relating to this Agreement. Other than the terms of this Agreement, <u>and the</u> terms of the CDDV Agreements and the CDP Agreement which are not modified or amended by the terms of this Agreement, there are no other terms, covenants, conditions or representations.

In addition, since the draft settlement agreement was never completed, blanks were left in the notice provisions. As a housekeeping matter, we proposed to Hornell amending paragraph 11, as reflected in the proposed order submitted with this letter.

We have been in contact with Mr. Wolfson about these proposals. Hornell has agreed to amend the notice provision in paragraph 11, but has objected to the two other proposals. The reason cited by Hornell is that the distribution agreements and the settlement agreement contain different dispute resolution provisions. The original agreements contain arbitration clauses, whereas the parties have agreed to have the terms of their agreement approved by this Panel and confirmed by a court. Hornell asserts that the choice of forum in the settlement agreement should apply only to claims arising from the settlement documents. We have asked Hornell to get back to us with a proposal to address its concerns, but Hornell has declined to do so.

We believe that the distinction Hornell is seeking is already drawn in paragraph 13 of the settlement agreement. Nonetheless, Claimants are certainly willing to make this distinction clearer to assuage Hornell's concerns. Thus, Claimants have drafted a proposed form of order setting forth the proposed amendments discussed above as well as an amendment to paragraph 13 to make it clear that the choice of forum provision in the settlement agreement will apply only to disputes relating to the terms of the settlement agreement or the consent award.

Claimants respectfully request the entry of the enclosed Order. If Hornell has specific objections or counter-proposals, we are available at the Panel's convenience to participate in a conference call.

Respectfully,

*/s/ Dana B. Klinges*
Dana B. Klinges
For WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP

Enclosure

Eugene S. Ginsberg, Esquire
E. Leo Milonas, Esquire
Hon. Walter M. Schackman, Esquire
June 8, 2007
Page 5

cc:   Howard S. Wolfson, Esquire (*via E-Mail*)
      Kimberly Claxton (*via E-Mail*)

PHL:5624544.3/CAN039-151063

## ORDER

The Arbitrators hereby vacate their Order of February 8, 2007. The parties are hereby bound by:

1. The signed Letter Agreement, dated November 14, 2006;

2. The signed three paragraph handwritten document, dated November 14, 2006; and

3. The unsigned and undated "Settlement Agreement and Mutual Release," subject to the following four amendments:

   (a) Paragraph 1(Amendments to the Distribution Agreements) shall be replaced by the following:

   > **1. Amendments to the Distribution Agreements:** The November 14, 2006 Letter Agreement and its handwritten amendments (the "Letter Agreement"), along with the CDDV Agreements and the CDP Agreement which are amended thereby, are incorporated into and made part of this Agreement. A copy of the Letter Agreement and its handwritten amendments is attached as Exhibit A.

   (b) Paragraph 8 (Final Understanding) shall be replaced with the following:

   > **8. Final Understanding:** The Parties agree that the CDDV Agreements and the CDP Agreement remain in full force and effect according to their terms as amended by this Agreement. The CDDV Agreements, the CDP Agreement, this writing, and the appended and incorporated Letter Agreement and the handwritten amendments thereto, constitute the complete, final and entire understanding of the Parties hereto with respect to all matters relating to this Agreement. Other than the terms of this Agreement, and the terms of the CDDV Agreements and the CDP Agreement which are not modified or amended by the terms of this Agreement, there are no other terms, covenants, conditions or representations.

   (c) Paragraph 11 (Notices) shall be replaced with the following:

   > **11. Notices:** Any notice or other transmission of information required under the provisions of this Agreement shall be made by overnight courier service, addressed as follows:

### For CDDV and/or CDP:

Canada Dry Delaware Valley Bottling Company, and/or
Canada Dry Potomac Corp.
8275 U.S. Route 130, Pennsauken, New Jersey 08110
Attn: Jeffrey Honickman

-and-

Dana B. Klinges, Esquire
Wolf, Block, Schorr & Solis-Cohen, LLP
1650 Arch Street, 22nd Floor
Philadelphia, PA 19103

### For Hornell Brewing Company, Inc.:

Hornell Brewing Company, Inc.
5 Dakota Drive
Lake Success, NY 11042
Attn: Martin Cunningham, Esquire

-and-

Howard Wolfson, Esquire
Morrison Cohen LLP
909 Third Avenue
New York, NY 10022

(d) Paragraph 13 (Choice of Law and Venue) shall be replaced with the following:

13. **Choice of Law and Venue:** The parties agree that this Agreement is governed by the laws of the State of New York. Notwithstanding the arbitration provisions in the CDDV Agreements and the CDP Agreement which remain in effect for any dispute unrelated to this Agreement, the venue for any action arising out of the interpretation, enforcement or a breach of this Agreement or the Consent Award as confirmed shall be the United States District Court for the Southern District of New York or, if the Consent Award is confirmed in state court pursuant to paragraph 3 above, the Supreme Court of New York, New York County.

For the Panel                                                              Dated June ____, 2007

_____
Eugene S. Ginsberg, Chair