Exhibit H

# MorrisonCohen LLP

Howard Wolfson
Partner
(212) 735-8872
hwolfson@morrisoncohen.com

June 18, 2007

**VIA E-MAIL AND MAIL**

Eugene S. Ginsberg, Esq.                    Hon. Walter M. Schackman
Law Offices of Eugene S. Ginsberg          Davis & Gilbert LLP
300 Garden City Plaza                       1740 Broadway
Garden City, New York  11530               New York, New York  10019

Hon. E. Leo Milonas
Pillsbury Winthrop Shaw Pittman, LLP
1540 Broadway
New York, New York  10036-4039

Re:    CDDV and CDP and Hornell Brewing Co., Inc., 13 181 01425 05

Dear Panel Members:

This responds to Claimants' counsel's letter dated June 8, 2007, which is essentially a motion for the Panel to modify its February 8, 2007 Order ("Order").

Claimants' counsel argues that "the Panel created three stand-alone documents" and that she is "concerned . . . about the lack of integration between the . . . documents enforced by the [Panel's] Order." (Letter at p. 1.) Claimants' counsel's concerns about the agreements' purported "lack of integration" mirrors Claimants' arguments in their opposition to Hornell's motion to enforce the settlement. The Panel rejected those arguments four (4) months ago and should, respectfully, reject them now. The Panel did not create the three (3) agreements at issue -- the parties did. The Panel simply ruled that the agreements, whether ambiguous or fully integrated or not, had been agreed to and were enforceable.

If the Claimants believed that the Panel's Order required modification, then under Rule 46 of the AAA's Commercial Arbitration Rules they were required to raise this issue, on notice to Hornell, within twenty (20) days after transmittal of the Panel's Order. The Claimants failed to raise this issue until June 8, 2007, approximately one hundred (100) days after their time to do so had expired. Indeed, their counsel did not raise this issue with Hornell's counsel until April 30, 2007, a full two (2) months after their time to raise the issue had passed. This entire issue is an afterthought that was raised by Claimants' counsel only after Hornell would not agree to amend the agreements that the Panel had enforced.

Because the Panel agreed with Hornell's position that the so-called "stand-alone amendments" prepared by Claimants' counsel were not provided for in the parties' November 14, 2006 Letter Agreement, the Panel's Order obviously intended to strike all references to the "Amendments" in the Settlement Agreement and Mutual Release ("Settlement Agreement").

MorrisonCohen LLP

Eugene S. Ginsberg, Esq.
Hon. E. Leo Milonas
Hon. Walter M. Schackman
June 18, 2007
Page 2

Claimants' counsel correctly points out that the Panel neglected to strike the reference to "the Amendments" in the first sentence of Paragraph 8 of the Settlement Agreement. This can be corrected, if the Panel deems it necessary, simply by deleting the last part of the first sentence of Paragraph 8 that reads: "as amended by this Agreement and the Amendments."

As for Claimants' counsel's argument that the "settlement agreement . . . does not contain or incorporate any of the parties' key business settlement items" (Letter at p. 2), this again is precisely the same argument that Claimants unsuccessfully made in opposition to Hornell's motion to enforce the settlement. The Panel agreed with Hornell that the business terms of the settlement were set forth in the November 14, 2006 Letter Agreement and handwritten Rider and that the Settlement Agreement was intended only to set forth the "legal bells and whistles." Claimants are simply attempting to reargue this issue.

Lastly, Claimants request that the Panel incorporate the CDP and CDDV Distributor Agreements into the Settlement Agreement. However, neither the November 14, 2006 Letter Agreement nor the handwritten Rider include a provision providing that the CDP Distributor Agreement or the CDDV Distributor Agreements will be incorporated into the Settlement Agreement. Accordingly, the Panel should not add such a provision.

The Panel should enter a Consent Award consisting of the three (3) agreements that comprise the parties' settlement. We have attached a proposed Form of Consent Award for the Panel's consideration.

Respectfully submitted,

Howard S. Wolfson

cc:     Dana Klinges, Esq.

HSW/rr

AMERICAN ARBITRATION ASSOCIATION
NEW YORK, NEW YORK

CANADA DRY DELAWARE VALLEY )
BOTTLING COMPANY, AND CANADA )
DRY POTOMAC CORPORATION, )
                                                          )
               Claimants, )
                                                           )         **AAA Case No.**
     -against- )         **13 181 01425 05**
                                                            )
HORNELL BREWING CO., INC. D/B/A )
FEROLITO, VULTAGGIO & SONS, )
                                                            )
               Respondent. )

---

## CONSENT AWARD OF ARBITRATORS

      We, the undersigned Arbitrators, having been duly designated in accordance with the arbitration agreements entered into between the above-named parties dated March 17, 1997 and December 23, 1998, and having been duly sworn, and the parties having reached a settlement of this arbitration in accordance with our February 8, 2007 decision (a copy of which is also attached hereto) finding that they are bound by the attached agreements.

      Now, therefore, we hereby make the terms set forth in the attached agreements, which comprise the settlement, our Consent Award as follows:

      Attachment A - the signed Letter Agreement dated November 14, 2006;

      Attachment B - the signed three paragraph handwritten document dated November 14, 2006; and

      Attachment C - the unsigned "Settlement Agreement and Mutual Release" dated November ___, 2006, except for (a) Paragraph 1 (Amendments to the Distribution Agreement) and (b) "by this Agreement and the Amendments" in the first line of Paragraph 8 "and the Amendments" in the sixth line of Paragraph 8 (Final Understanding), which are stricken.

      The administrative fees and expenses of the American Arbitration Association totaling _____ shall be borne 50% by the Claimants and 50% by the Respondent, and the compensation and expenses of the arbitrators totaling _____ shall be borne 50% by the Claimants and 50% by the Respondent. Therefore, no party shall reimburse any other party for any fees and expenses.

This Consent Award is in full settlement of all claims and counterclaims submitted in this Arbitration. All claims not expressly granted herein are hereby denied.

_____                _____
            Date                                    Eugene Ginsberg, Esquire


_____                _____
            Date                                    Hon. E. Leo Milonas


_____                _____
            Date                                    Hon. Walter Schackman


I, Eugene Ginsberg, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is the award of this Arbitration Panel.

_____                _____
            Date


I, E. Leo Milonas, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is the award of this Arbitration Panel.

_____                _____
            Date


I, Walter Schackman, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is the award of this Arbitration Panel.


_____                _____
            Date

Having considered the submissions and arguments of counsel, the Arbitrators find the parties are bound by:

1.    The signed Letter Agreement, dated November 14, 2006;

2.    The signed three paragraph handwritten document, dated November 14, 2006; and

3.    Except for (a) Paragraph 1 (Amendments to the Distribution Agreement) and (b) "and the Amendments" in the sixth line of paragraph 8 (Final Understanding), all of the remaining provisions of the unsigned "Settlement Agreement and Mutual Release", dated November __, 2006.

For the Panel                                          Dated:  February 8, 2007

Eugene S. Ginsberg, Chair

D533470v1

# EXHIBIT A

November 14, 2006

VIA FAX: 212-735-8708

Mr. Don Vultaggio
Hornell Brewing Co., Inc.
5 Dakota Drive, Suite 205
Lake Success, NY 11042

Dear Don:

    I am writing in response to David Menashi's letter to Lewis Gantman, dated November 10, 2006. I am sure we both understand the value of settlement – both in the avoidance of potential liability and in our ability to craft our own resolution. Accordingly, we are not interested in settling this matter by submitting a host of issues for the Panel to decide. If we are going to resolve this case amicably, let us resolve it by our own terms.

    We have revised the terms from my November 3, 2006 letter, as follows:

1.  Hornell will agree to the deletion of that portion of Paragraph 2.4 of the distribution agreements between the parties (the "Agreements") beginning with the phrase, "provided, however, that if in the Manufacturer's good faith,..." and continuing through the remainder of the paragraph. The deleted language will be replaced by language stating that CDDV and/or CDP will give Hornell written notice of transshipment. Upon the receipt of written notice, both parties would have a period of 60 days to determine if they were responsible for the transshipment problem and eliminate it. If after the 60-day cure period the transshipment continues, then CDDV/CDP would give Hornell written notice of the continuation of the transshipment, and both parties would use their "best efforts" to eliminate the transshipment problem.

2.  In the absence of a mutually agreeable Business Plan pursuant to Paragraph 10 of the Agreements, Paragraph 2.1 of the Agreements will require CDDV and CDP to diligently and aggressively promote and actively solicit the sale and distribution of Exclusive Products in good faith and in a manner consistent with the terms of the Agreements as amended by the Settlement Agreement, including the distribution goals set forth in paragraphs 6, 7 and 8.

3.  Hornell shall be permitted to distribute the following specific packages of hot fill Exclusive Products to the following specific customers within the Territories on a direct basis:

NOV-14-2008  11:23
NOV. 14. 2006  9:05PM                                                      NO. 720    P. 03
11/14/2008 17:29 FAX 18588814560        Executive Offices

a.  Drug Stores:

CVS, Walgreen's and Brook's/Eckerd/Rite Aid
Full Product Line

b.  Club Stores:

Sam's Club, BJ's and Costco
16 ounce glass bottles and 15.5 ounce cans

c.  Mass Merchandisers:

K Mart and Target
16 and 20 ounce glass bottles and 23.5 ounce Big Cans

Walmart
16 and 20 ounce glass bottles

d.  Aldi's:

Full Product Line

e.  Convenience Stores:

Sheetz
16 and 20 ounce glass bottles

Cumberland Farms and High's
16 and 20 ounce glass bottles and 23.5 ounce Big Cans

f.  Supermarkets:

Shop Rite, Pathmark, Super Fresh, Stop & Shop, Safeway and Genuardi's
Products equal or less than 12 ounce and greater than one liter

For Safeway and Genuardi's only, Hornell shall be permitted to sell the
Arizona Energy Drink in the Green Tea, Diet Green Tea and Green Tea
Pomegranate Flavors in 16 ounce cans.

g.  Military:

Full Product Line. There shall be no distribution of Products to any of the
following customers except to the extent Hornell can demonstrate a
history of sales: Walter Reed Hospital, Bowling Air Force Base, Quantico
Marine Base, Fort Meade, Naval Academy, Fort Belvoir, Fort Myer, Fort

NOV. 14. 2000  9:04PM

11/14/2006 17:30 FAX 18588614580          Executive Offices          NO. 720      @005      P.04

McNair and Dover Air Force Base. To the extent CDDV or CDP obtain evidence of improper sales to any of these bases, such evidence will be forwarded to Hornell immediately.

h.  Food Service:

    Syrup may be sold through a commissary system to any national restaurant chain. In addition, Hornell may sell its full product line to McDonald's, Burger King and Wendy's through a self-distribution commissary system, which must be wholly-owned or controlled by such restaurant customer, must distribute products exclusively to such restaurant customer, and must operate all of its outlets under its trademark.

i.  Vending Machine Accounts:

    Sales to vending machine accounts will include only packages which are permanently marked "For vending only and not for resale" and will not include a UPC on the package. CDDV/CDP will provide Hornell with written notice of "vending packages" that appeared in the market for resale within 60 days of its becoming aware of the problem. Hornell would have 60 days to cure this problem by eliminating the sales of the "vending packages" to the appropriate customers.

4.  The exceptions to exclusivity specified in Paragraph 3 above relating to convenience stores and supermarkets only apply to existing stores of those customers and new stores of those customers. However, the exceptions shall not apply if the new stores were opened pursuant to an acquisition or business combination with an existing store chain that has at least 10 stores.

5.  The 16 ounce "Fresh Choice" product will be a Non- Exclusive Product in the CDDV and CDP territories if Hornell and the product meet and enforce all of the following conditions: 1) the product is produced without preservatives in an ultra-high temperature pasteurization process; 2) the product requires refrigeration at the manufacturer, distributor and retailer levels; 3) Hornell informs its customers that the product must be sold in the dairy refrigerated section of the retail store; and 4) the product is not sold in the CDDV and CDP coolers. ~~Any packages~~

6.  CDDV and CDP will agree to distribute enough Arizona SKU's to represent at least 80% of the annual DSD sales in the Northeastern part of the United States from Virginia to Maine for each of the following package sizes – 16 ounce bottle, 20 ounce bottle, and 23.5 ounce "Big Can". Hornell will provide an annual report certifying SKU sales in the Northeastern part of the United States from Virginia to Maine to verify the SKU distribution requirements. The SKU's will be selected jointly by CDDV/CDP and Arizona to reflect the most appropriate products for the marketplace.

7. Introduction of new product lines: If any new product bears the Arizona trademark, or the trade dress of any new product is substantially similar to that of an Exclusive Product, the new product must be offered to CDDV and CDP on an exclusive basis and on the same terms and conditions as other Exclusive Products. If such product is accepted, then the product shall be added to Schedule A-1. If Hornell offers such new product line and CDDV and/or CDP elects not to carry it, then this new product line will be added to Schedule A-2 as a Non-Exclusive Product. ~~This Paragraph does not apply to normal sales and item internal writer.~~

8. Introduction of new flavors: CDDV and CDP will agree to present any new flavor to at least 40% of its active customers in the "All Other Market" category, as defined by CDDV and CDP, as will be evidenced by a written confirmation signed by a representative of each customer. CDDV and CDP will agree to distribute all new flavors of any existing product line for at least one year, unless CDDV and/or CDP have a contractual prohibition on such offering. CDDV and CDP will also agree to distribute a minimum of 50% of all new SKU's in any line extension (i.e., Rx Black Teas) of any existing product for a period of at least one year. If after one year, CDDV or CDP deletes any flavor referred to in this Paragraph, that flavor shall continue to be an Exclusive Product. New flavors will not be considered within the 80% rule stated in Section III.B above for the first year of the new flavor's distribution.

9. With respect to any new flavor, new package or new product line taken on by CDDV or CDP, each entity will purchase one trailer-load of such new flavor, new package or new product line within 30 days of its introduction into the Territories. In addition, each entity will offer a 30-day price promotion to the trade for such new flavor, new package or new product line as long as a margin of $1.00/case is maintained during the promotion.

10. CDDV and CDP will each run two 30-day incentive programs for salesmen each year. Each incentive program will provide up to a maximum incentive of $1.00 per case sold, the cost of which is to be shared equally by Hornell and the distributor. CDDV and CDP will each reach a mutual agreement with Hornell on the particular flavors, package sizes and product lines to be included in the incentive programs.

11. In recognition of the additional exceptions to exclusivity which are being codified in this agreement and the additional competition that has existed and will continue to exist between the parties with respect to retail accounts in the Territories, Paragraph 7.2 of the Agreements will be amended to define "Customer Information" to specifically include gross sales information by package and by channel, but not to include the names or addresses of customers.

12. The Settlement Agreement will contain a mechanism to have the Settlement Agreement approved by the Arbitration Panel and confirmed by the United States District Court for the Southern District of New York. ~~The settlement agreement shall include a provision permitting either party the right to put to default without sixty (60) days notice of any default.~~

11/14/2006 17:31 FAX 18566616580          Executive Offices

While I am confident that you and I can resolve this matter quickly and permanently, I cannot let these negotiations drag on or risk interfering with our preparation for the upcoming hearing dates. Accordingly, the terms above represent our best and final offer. If we cannot settle this case in this manner at this time, settlement negotiations will have to be put on hold indefinitely.

Sincerely,

Harold A. Honickman

Agreed _____ Date NOV 14 2006
Harold A. Honickman

Agreed _____ Date NOV 14 2006
Don Vultaggio

# EXHIBIT B

paragraph 7

This paragraph shall not apply to Soho natural soda and any vitamin enhanced waters presented to CDDU and CPP prior to the date of this letter

paragraph 5

any package greater than 1 liter shall be excluded from the distribution agreement

parag. 13

The settlement agreement shall include a provision permitting either party to cure any default within 60 days of receipt of a written notice of any such default.

agreed _____ Harold H. _____ NOV 14 2006

agreed _____ Don V. _____ NOV 14 2006

Don V_____

EXHIBIT C

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (hereinafter the "Agreement") is made by and between Canada Dry Delaware Valley Bottling Company ("CDDV"), Canada Dry Potomac Corp. ("CDP") (collectively, the "Claimants") and Hornell Brewing Company, Inc. d/b/a Ferolito, Vultaggio & Sons ("Hornell"). This Agreement shall be deemed entered into as of the date of the signature of the last party or party representative to sign.

**WHEREAS,** Hornell executed an exclusive distribution agreement with CDDV on March 17, 1997, granting CDDV exclusive distribution rights in Bucks, Chester, Delaware, Montgomery and Philadelphia Counties in Pennsylvania (the "Pennsylvania Agreement");

**WHEREAS,** Hornell executed an exclusive distribution agreement with CDDV on March 17, 1997, granting CDDV exclusive distribution rights in Atlantic, Burlington, Camden, Cape May, Cumberland, Gloucester and Salem Counties in New Jersey, and Kent, New Castle and Sussex Counties in Delaware (the "New Jersey Agreement," referred to with the Pennsylvania Agreement as the "CDDV Agreements");

**WHEREAS,** Hornell executed an exclusive distribution agreement with CDP on December 23, 1998, granting CDP exclusive distribution rights in the District of Columbia and Anne Arundel, Baltimore, Baltimore City, Carroll, Frederick, Howard, Montgomery, and Prince George's Counties in Maryland (the "CDP Agreement");

**WHEREAS,** CDDV and CDP commenced an arbitration against Hornell by causing a demand for arbitration to be delivered to the American Arbitration Association on June 22, 2005, captioned *Canada Dry Delaware Valley Bottling Co. and Canada Dry Potomac Corp. v. Hornell Brewing Co., Inc. d/b/a/ Ferolito, Vultaggio & Sons,* AAA Case Number 13 181 01425 05 (the "Action");

**WHEREAS,** Hornell disputes the claims asserted by CDDV and CDP in the Action and has asserted defenses and a counterclaim; and

**WHEREAS,** CDDV, CDP and Hornell (collectively, the "Parties") desire to settle all claims that were or could have been asserted in the Action without incurring further litigation costs;

**NOW, THEREFORE,** in consideration of the mutual obligations and undertakings set forth herein, and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, and intending to be legally bound hereby, the undersigned hereby to agree as follows:

1. 

2. **Consent to Award:** The parties agree to seek the Arbitration Panel's approval to conclude this Action by jointly submitting a copy of the Agreement to the Arbitration Panel as an attachment to a proposed Consent Award.

3. **Confirmation:** Any party may file a petition to confirm the Consent Award. The Parties agree that the amount in controversy in the Action exceeds the sum or value of $75,000, exclusive of interest and costs, and that the preferred forum for confirmation is the United States District Court for the Southern District of New York. Should that court decline jurisdiction for any reason, the Consent Award may be confirmed in the Supreme Court of New York, New York County. The Parties agree not to object to such a petition on any ground, including but not

limited to jurisdiction, and the Parties further agree not to file a petition to vacate the Consent Award.

4.    **Mutual Releases:** The Parties for good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, for themselves and each of their respective past, present and future officers, employees, directors, shareholders, agents, representatives, affiliates, partners, subsidiaries, successors and assigns, do hereby remise, release and discharge each other and hold each other and their respective past, present and future officers, employees, directors, shareholders, agents, representatives, affiliates, partners, subsidiaries, successors and assigns of any of them harmless for any and all claims relating to the CDDV Agreements and/or CDP Agreement that were or could have been asserted in the Action.

5.    **Confidentiality:** The Parties agree that all documents collected during the course of discovery in the Action shall be kept confidential and shall not be disclosed or otherwise disseminated to any other person(s) or individual(s), except as the parties may be required by Order of Court or other governmental agency, and/or as the parties have agreed in the Confidentiality Agreement in this matter which, by its terms, survives the conclusion of the Action and requires all "Confidential Information" to be returned or destroyed. To the extent any documents have been labeled "Attorneys' Eyes Only" and not "Confidential," the Parties agree that such documents should be deemed, "Confidential Information" and returned or destroyed as required by the Confidentiality Agreement. Any party making any disclosure of evidence or documents permitted by the first sentence of this paragraph must provide to the opposing party's counsel notice that the evidence or documents will be disclosed at least five (5) business days before the date of any such disclosure. The parties further agree that the terms and conditions of this Agreement shall be kept confidential and shall not be disclosed or otherwise disseminated to any other person(s) or individual(s) except as follows: (1) as may be necessary to

seek confirmation or enforcement of this Agreement, (2) as the parties may be required by Order

of Court or other governmental agency, and/or (3) as may be needed by the parties' agents and

professional advisors, including their auditors, accountants, and attorneys. Any party making

any disclosure to its agents and professional advisors, including its auditors, accountants, and

attorneys, as permitted by this paragraph, shall advise any such person or entity that the

disclosure is subject to this confidentiality provision and shall obtain reasonable assurances from

any such person or entity that it will not disclose any information covered by this confidentiality

provision. It is further understood and agreed that the parties and their respective counsel shall

not in any way publicize or give comment to any third parties, aside from those listed above,

including any news or communication media (including, but not limited to, newspapers,

magazines, radio, television, or Internet) regarding the terms and/or conditions of this Agreement

or the evidence, claims or contentions regarding the Action.

6.    **Attorneys' Fees and Costs:** The Parties agree that the costs of litigation and

attorneys' fees in the Action shall be borne by the respective party incurring such costs or

attorneys' fees and that the arbitration costs shall be paid 50% by the Claimants and 50% by the

Respondent.

7.    **Preparation of the Agreement and Construction:** Each Party has cooperated in

the drafting and preparation of this Agreement. Therefore, the Agreement shall not be construed

against any Party.

8.    **Final Understanding:** The Parties agree that the CDDV Agreements and the

CDP Agreement remain in full force and effect according to their terms, ███████████

███████████████████████    This writing constitutes the complete, final and entire

understanding of the Parties hereto with respect to all matters relating to this Agreement. Other

than the terms of this Agreement, terms of the CDDV Agreements and the CDP Agreement

which are not modified or amended by the terms of this Agreement ███████████, there

are no other terms, covenants, conditions or representations.

      9.    **Amendment:** This Agreement may not be modified or changed orally, and may

be amended only by an agreement in writing signed by the Parties.

      10.    **Claims Arising out of the Enforcement of this Agreement:** The Parties do not

release each other from any claims, counterclaims, demands, causes of action and rights of action

arising out of the enforcement of the terms of this Agreement or the Consent Award as

confirmed by a court of competent jurisdiction. Prior to commencing any action relating to the

enforcement of this Agreement or the Consent Award as confirmed, the party alleging breach

must provide notice to the party alleged to have breached, specifying in sufficient detail the

allegation and the basis therefor, and must provide no less than 60 days to cure the alleged

breach.

      11.    **Notices:** Any notice or other transmission of information required under the

provisions of this Agreement shall be made by overnight courier service, addressed as follows:

### For CDDV and/or CDP:

Canada Dry Delaware Valley Bottling Company, and/or
Canada Dry Potomac Corp.
8275 U.S. Route 130, Pennsauken, New Jersey 08110
Attn: Jeffrey Honickman

-and-

Dana B. Klinges, Esquire
Wolf, Block, Schorr & Solis-Cohen, LLP
1650 Arch Street, 22nd Floor
Philadelphia, PA 19103

### For Hornell Brewing Company, Inc.:

Hornell Brewing Company, Inc.
5 Dakota Drive, Lake Success
New York, NY 11042
Attn: _____

-and-

Howard Wolfson, Esquire
Morrison Cohen LLP
909 Third Avenue
New York, NY 10022

12.    **Representations and Warranties:** The Parties further represent and warrant that:

    a.   they have not made any promise, representation or warranty, express or implied, not contained in this Agreement concerning the subject matter of this Agreement and the Parties acknowledge that they have not executed this Agreement in reliance upon any such promise, representation or warranty not contained in this Agreement;

    b.   they have not assigned the claims asserted in the Action to any other entity; and

    c.   each of the signatories for the Parties further represents that he or she is fully authorized to enter and execute this Agreement for and on behalf of the entity that he or she represents and that such entity has duly authorized him or her to sign on its behalf, as reflected on the attached signature page(s).

13.    **Choice of Law and Venue:** The parties agree that this Agreement is governed by the laws of the State of New York. Notwithstanding the arbitration provisions in the CDDV Agreements and the CDP Agreement, the venue for any action arising out of the interpretation, enforcement or a breach of this Agreement or the Consent Award as confirmed shall be the United States District Court for the Southern District of New York or, if the Consent Award is confirmed in state court pursuant to paragraph 3 above, the Supreme Court of New York, New York County.

14.    **Counterparts:**  This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original.  The executed signature pages from each counterpart may be joined together and attached to one such original, which shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed on the last day and year written below:

Canada Dry Delaware Valley Bottling Company, and
Canada Dry Potomac Corp.


By: Harold Honickman, Chairman

Date:  November _____, 2006


Hornell Brewing Co., Inc.


By:  Don Vultaggio,

Date:  November _____, 2006