Exhibit I

# MorrisonCohen LLP

Howard Wolfson
Partner
(212) 735-8872
hwolfson@morrisoncohen.com

July 9, 2007

**VIA E-MAIL AND MAIL**

Eugene S. Ginsberg, Esq.                          Hon. Walter M. Schackman
Law Offices of Eugene S. Ginsberg                 Davis & Gilbert LLP
300 Garden City Plaza                             1740 Broadway
Garden City, New York  11530                      New York, New York  10019

Hon. E. Leo Milonas
Pillsbury Winthrop Shaw Pittman, LLP
1540 Broadway
New York, New York  10036-4039

Re:    CDDV and CDP and Hornell Brewing Co., Inc., 13 181 01425 05

Dear Panel Members:

This responds to Claimants' counsel's July 3, 2007 letter, once again requesting that the Panel amend its February 8, 2007 Order (the "Order").

As previously stated in my June 18, 2007 letter, we only agree with Claimants' counsel insofar as she notes that the Panel obviously intended to strike all references to the "Amendments" in the Settlement Agreement and Mutual Release ("Settlement Agreement") but inadvertently overlooked a reference to the Amendments in Paragraph 8. This can be corrected, if the Panel deems it necessary, by amending Paragraph 3 of the Order to read as follows:

> 3.    Except for (a) Paragraph 1 (Amendments to the Distribution Agreement) and (b) "by this Agreement and the Amendments" in the first line of Paragraph 8 (Final Understanding) "and the Amendments" in the sixth line of Paragraph 8, all of the remaining provisions of the unsigned "Settlement Agreement and Mutual Release," dated November ___, 2006.

However, we oppose Claimants' request to amend the Order to add terms to the settlement that the parties never agreed to: to wit, a provision incorporating the entire CDP and CDDV Distributor Agreements into the Settlement Agreement. The sole argument that was made in support of this amendment is that "[i]t would be strange indeed to have a settlement agreement that did not include the business terms of the settlement." (Claimants' June 18 Letter at p. 2). This is the identical argument that was made months ago and rejected by this Panel when Claimants unsuccessfully argued against enforcement of the settlement. The simple answer then, just as it is now, is that *the business terms of the settlement are fully set forth in the November 14, 2006 Letter Agreement and handwritten Rider* -- and not in the Settlement Agreement, which as the Panel is aware only contains the legal bells and whistles. Most importantly, the November 14 Letter Agreement and handwritten Rider can be searched in vain for any provision in which the parties agreed that the CDP and CDDV Distributor Agreements would be incorporated into the Settlement

MorrisonCohen LLP

Eugene S. Ginsberg, Esq.
Hon. E. Leo Milonas
Hon. Walter M. Schackman
July 9, 2007
Page 2


Agreement. Incorporating the entire CDP and CDDV Distributor Agreements into the Settlement Agreement has nothing whatsoever to do with enforcing the settlement. Moreover, rather than correcting the Panel's Order, it instead attempts to add a settlement term that the parties did **not** agree to.

Accordingly, we respectfully disagree with Claimants' counsel's contention that the consent of all parties is not required for the Panel to grant the relief requested by Claimants.

Respectfully submitted,

Howard S. Wolfson


cc: Dana Klinges, Esq.


HSW/rr


#832697 v2 \16932 \003

Exhibit J

Having considered the submissions and arguments of counsel, the Arbitrators revise their February 8, 2007 findings and hereby Order that the parties are bound by:

1.     The signed Letter Agreement, dated November 14, 2006;

2.     The signed three paragraph handwritten document, dated November 14, 2006; and

3.     Except for (a) Paragraph 1 (Amendments to the Distribution Agreement) and (b) "and the Amendments" in the first line and in the sixth line of paragraph 8 (Final Understanding), all of the remaining provisions of the unsigned "Settlement Agreement and Mutual Release", dated November __, 2006.

For the Panel                                          Dated:  July 12, 2007

_____

Eugene S. Ginsberg, Chair

Exhibit K

08/20/2007 02:51 FAX                                                                002/003

# AMERICAN ARBITRATION ASSOCIATION
## NEW YORK, NEW YORK

| | |
|---|---|
| CANADA DRY DELAWARE VALLEY BOTTLING COMPANY, AND CANADA DRY POTOMAC CORPORATION,      ) ) ) ) | |
| Claimants,      ) ) | AAA Case No. |
| -against-      ) ) | 13 181 01425 05 |
| HORNELL BREWING CO., INC. D/B/A FEROLITO, VULTAGGIO & SONS,      ) ) ) | |
| Respondent.      ) | |

---------------------------------------------------------

## CONSENT AWARD OF ARBITRATORS

     We, the undersigned Arbitrators, having been duly designated in accordance with the arbitration agreements entered into between the above-named parties dated March 17, 1997 and December 23, 1998, and having been duly sworn, and the parties having reached a settlement of this arbitration in accordance with our July 12, 2007 Order (a copy of which is also attached hereto) finding that they are bound by the attached agreements.

     Now, therefore, we hereby make the terms set forth in the attached agreements, which comprise the settlement, our Consent Award as follows:

     Attachment A - the signed Letter Agreement dated November 14, 2006;

     Attachment B - the signed three paragraph handwritten document dated November 14, 2006; and

     Attachment C - the unsigned "Settlement Agreement and Mutual Release" dated November ___, 2006, except for (a) Paragraph 1 (Amendments to the Distribution Agreement) and (b) "and the Amendments" in the first line and in the sixth line of Paragraph 8 (Final Understanding), which are stricken.

     The administrative fees of the American Arbitration Association totaling $13,500.00, and the compensation and expenses of the arbitrators totaling $131,978.44 shall be borne as incurred. Therefore, no party shall reimburse any other party for any fees and expenses.

     This Consent Award is in full settlement of all claims and counterclaims submitted in this Arbitration. All claims not expressly granted herein are hereby denied.

#65352B v3 \16932 \003

CONSENTED TO:

_Zachy C. Gla_

Wolf, Block Schorr & Solis-Cohen, LLP
Dana Klinges, Esq.
Zachary Glaser, Esq.
Counsel for Claimants
Dated: 8-20-07

Morrison Cohen LLP
Howard S. Wolfson, Esq.
Counsel For Respondent
Dated:

_____          _____
Date                                Eugene Ginsberg, Esquire

_____          _____
Date                                Hon. E. Leo Milonas

_____          _____
Date                                Hon. Walter Schackman

I, Eugene Ginsberg, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is the award of this Arbitration Panel.

_____
Date

I, E. Leo Milonas, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is the consent award of this Arbitration Panel.

_____
Date

I, Walter Schackman, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is the consent award of this Arbitration Panel.

_____
Date

#653828 v3 \16932 \003                          2

CONSENTED TO:

_Howard S Wolfson_

_____          _____
Wolf, Block Schorr & Solis-Cohen, LLP          Morrison Cohen LLP
Dana Klinges, Esq.                              Howard S. Wolfson, Esq.
Zachary Glaser, Esq.                            Counsel For Respondent
Counsel for Claimants                           Dated:
Dated:


_____          _____
        Date                                Eugene Ginsberg, Esquire


_____          _____
        Date                                Hon. E. Leo Milonas


_____          _____
        Date                                Hon. Walter Schackman


I, Eugene Ginsberg, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is the award of this Arbitration Panel.


_____
        Date


I, E. Leo Milonas, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is the consent award of this Arbitration Panel.


_____
        Date


I, Walter Schackman, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is the consent award of this Arbitration Panel.


_____
        Date


#653828 v3 \16932 \003                              2

CONSENTED TO:

Wolf, Block Schorr & Solis-Cohen, LLP          Morrison Cohen LLP
Dana Klinges, Esq.                             Howard S. Wolfson, Esq.
Zachary Glaser, Esq.                           Counsel For Respondent
Counsel for Claimants                          Dated:
Dated: 8-20-07

_____                        _____
        Date                                   Eugene Ginsberg, Esquire

_____                        _____
        Date                                   Hon. E. Leo Milonas

_____                        _____
        Date                                   Hon. Walter Schackman

I, Eugene Ginsberg, do hereby affirm upon my oath as Arbitrator that I am the individual
described in and who executed this instrument which is the award of this Arbitration Panel.

_____                        _____
        Date

I, E. Leo Milonas, do hereby affirm upon my oath as Arbitrator that I am the individual described
in and who executed this instrument which is the consent award of this Arbitration Panel.

_____                        _____
        Date

I, Walter Schackman, do hereby affirm upon my oath as Arbitrator that I am the individual
described in and who executed this instrument which is the consent award of this Arbitration
Panel.

_____                        _____
        Date

#853828 v3 1/6903 \003                         2

CONSENTED TO:

_____                    _____
Wolf, Block Schorr & Solis-Cohen, LLP        Morrison Cohen LLP
Dana Klinges, Esq.                           Howard S. Wolfson, Esq.
Zachary Glaser, Esq.                         Counsel For Respondent
Counsel for Claimants                        Dated:
Dated:


_____                    _____
          Date                               Eugene Ginsberg, Esquire

8/23/07                                       _____
_____                    Hon. E. Leo Milonas
          Date


_____                    _____
          Date                               Hon. Walter Schackman


I, Eugene Ginsberg, do hereby affirm upon my oath as Arbitrator that I am the individual
described in and who executed this instrument which is the award of this Arbitration Panel.


_____        _____
          Date


I, E. Leo Milonas, do hereby affirm upon my oath as Arbitrator that I am the individual described
in and who executed this instrument which is the consent award of this Arbitration Panel.

8/23/07                          _____
_____
          Date


I, Walter Schackman, do hereby affirm upon my oath as Arbitrator that I am the individual
described in and who executed this instrument which is the consent award of this Arbitration
Panel.


_____        _____
          Date


#653828 v3 \16932\003                    2

CONSENTED TO:

Wolf, Block Schorr & Solis-Cohen, LLP
Dana Klinges, Esq.
Zachary Glaser, Esq.
Counsel for Claimants
Dated: 8-20-07

Morrison Cohen LLP
Howard S. Wolfson, Esq.
Counsel For Respondent
Dated:

_____
Date

_____
Eugene Ginsberg, Esquire

_____
Date

_____
Hon. E. Leo Milonas

8/22/07
_____
Date

_____
Hon. Walter Schackman

I, Eugene Ginsberg, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is the award of this Arbitration Panel.

_____
Date

I, E. Leo Milonas, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is the consent award of this Arbitration Panel.

_____
Date

I, Walter Schackman, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is the consent award of this Arbitration Panel.

8/22/07
_____
Date

_____

#053828 v3 \16932 \003

2

Having considered the submissions and arguments of counsel, the Arbitrators revise their February 8, 2007 findings and hereby Order that the parties are bound by:

1.     The signed Letter Agreement, dated November 14, 2006;

2.     The signed three paragraph handwritten document, dated November 14, 2006; and

3.     Except for (a) Paragraph 1 (Amendments to the Distribution Agreement) and (b) "and the Amendments" in the first line and in the sixth line of paragraph 8 (Final Understanding), all of the remaining provisions of the unsigned "Settlement Agreement and Mutual Release", dated November ___, 2006.

For the Panel                                        Dated:  July 12, 2007

_____
Eugene S. Ginsberg, Chair

D556016v1

EXHIBIT A

November 14, 2006

VIA FAX: 212-735-8708

Mr. Don Vultaggio
Hornell Brewing Co., Inc.
5 Dakota Drive, Suite 205
Lake Success, NY 11042

Dear Don:

    I am writing in response to David Menashi's letter to Lewis Gantman, dated November 10, 2006. I am sure we both understand the value of settlement -- both in the avoidance of potential liability and in our ability to craft our own resolution. Accordingly, we are not interested in settling this matter by submitting a host of issues for the Panel to decide. If we are going to resolve this case amicably, let us resolve it by our own terms.

    We have revised the terms from my November 3, 2006 letter, as follows:

1.  Hornell will agree to the deletion of that portion of Paragraph 2.4 of the distribution agreements between the parties (the "Agreements") beginning with the phrase, "provided, however, that if in the Manufacturer's good faith...." and continuing through the remainder of the paragraph. The deleted language will be replaced by language stating that CDDV and/or CDP will give Hornell written notice of transshipment. Upon the receipt of written notice, both parties would have a period of 60 days to determine if they were responsible for the transshipment problem and eliminate it. If after the 60-day cure period the transshipment continues, then CDDV/CDP would give Hornell written notice of the continuation of the transshipment, and both parties would use their "best efforts" to eliminate the transshipment problem.

2.  In the absence of a mutually agreeable Business Plan pursuant to Paragraph 10 of the Agreements, Paragraph 2.1 of the Agreements will require CDDV and CDP to diligently and aggressively promote and actively solicit the sale and distribution of Exclusive Products in good faith and in a manner consistent with the terms of the Agreements as amended by the Settlement Agreement, including the distribution goals set forth in paragraphs 6, 7 and 8.

3.  Hornell shall be permitted to distribute the following specific packages of hot fill Exclusive Products to the following specific customers within the Territories on a direct basis:

a.  Drug Stores:

   CVS, Walgreen's and Brook's/Eckerd/Rite Aid
   Full Product Line

b.  Club Stores:

   Sam's Club, BJ's and Costco
   16 ounce glass bottles and 15.5 ounce cans

c.  Mass Merchandisers:

   K Mart and Target
   16 and 20 ounce glass bottles and 23.5 ounce Big Cans

   Walmart
   16 and 20 ounce glass bottles

d.  Aldi's:

   Full Product Line

e.  Convenience Stores:

   Sheetz
   16 and 20 ounce glass bottles

   Cumberland Farms and High's
   16 and 20 ounce glass bottles and 23.5 ounce Big Cans

f.  Supermarkets:

   Shop Rite, Pathmark, Super Fresh, Stop & Shop, Safeway and Genuardi's
   Products equal or less than 12 ounce and greater than one liter

   For Safeway and Genuardi's only, Hornell shall be permitted to sell the
   Arizona Energy Drink in the Green Tea, Diet Green Tea and Green Tea
   Pomegranate Flavors in 16 ounce cans.

g.  Military:

   Full Product Line.  There shall be no distribution of Products to any of the
   following customers except to the extent Hornell can demonstrate a
   history of sales: Walter Reed Hospital, Bowling Air Force Base, Quantico
   Marine Base, Fort Meade, Naval Academy, Fort Belvoir, Fort Myer, Fort

NOV. 15. 2000   9:04PM                                                        NO. 720    P.04
11/14/2006 17:30 FAX 18588614580        Executive Offices

McNair and Dover Air Force Base. To the extent CDDV or CDP obtain evidence of improper sales to any of these bases, such evidence will be forwarded to Hornell immediately.

   h.  Food Service:

      Syrup may be sold through a commissary system to any national restaurant chain. In addition, Hornell may sell its full product line to McDonald's, Burger King and Wendy's through a self-distribution commissary system, which must be wholly-owned or controlled by such restaurant customer, must distribute products exclusively to such restaurant customer, and must operate all of its outlets under its trademark.

   i.  Vending Machine Accounts:

      Sales to vending machine accounts will include only packages which are permanently marked "For vending only and not for resale" and will not include a UPC on the package. CDDV/CDP will provide Hornell with written notice of "vending packages" that appeared in the market for resale within 60 days of its becoming aware of the problem. Hornell would have 60 days to cure this problem by eliminating the sales of the "vending packages" to the appropriate customers.

4.  The exceptions to exclusivity specified in Paragraph 3 above relating to convenience stores and supermarkets only apply to existing stores of those customers and new stores of those customers. However, the exceptions shall not apply if the new stores were opened pursuant to an acquisition or business combination with an existing store chain that has at least 10 stores.

5.  The 16 ounce "Fresh Choice" product will be a Non- Exclusive Product in the CDDV and CDP territories if Hornell and the product meet and enforce all of the following conditions:  1) the product is produced without preservatives in an ultra-high temperature pasteurization process;  2) the product requires refrigeration at the manufacturer, distributor and retailer levels; 3) Hornell informs its customers that the product must be sold in the dairy refrigerated section of the retail store; and 4) the product is not sold in the CDDV and CDP coolers. *Any packa~~ges~~ ~~competi~~~~tion~~ ~~for~~ ~~sold~~ ~~Distributor~~ ~~Agreement~~*

12 ~~no existing Hornell after such~~ *be avoided from ~~all~~ Distributor Accounts*

6.  CDDV and CDP will agree to distribute enough Arizona SKU's to represent at least 80% of the annual DSD sales in the Northeastern part of the United States from Virginia to Maine for each of the following package sizes – 16 ounce bottle, 20 ounce bottle, and 23.5 ounce "Big Can", Hornell will provide an annual report certifying SKU sales in the Northeastern part of the United States from Virginia to Maine to verify the SKU distribution requirements. The SKU's will be selected jointly by CDDV/CDP and Arizona to reflect the most appropriate products for the marketplace.

7. Introduction of new product lines: If any new product bears the Arizona trademark, or
   the trade dress of any new product is substantially similar to that of an Exclusive
   Product, the new product must be offered to CDDV and CDP on an exclusive basis and
   on the same terms and conditions as other Exclusive Products. If such product is
   accepted, then the product shall be added to Schedule A-1. If Hornell offers such new
   product line and CDDV and/or CDP elects not to carry it, then this new product line
   will be added to Schedule A-2 as a Non-Exclusive Product. ~~This Paragraph has~~ ~~several sales and return relationships.~~

8. Introduction of new flavors: CDDV and CDP will agree to present any new flavor to
   at least 40% of its active customers in the "All Other Market" category, as defined by
   CDDV and CDP, as will be evidenced by a written confirmation signed by a
   representative of each customer. CDDV and CDP will agree to distribute all new
   flavors of any existing product line for at least one year, unless CDDV and/or CDP
   have a contractual prohibition on such offering. CDDV and CDP will also agree to
   distribute a minimum of 50% of all new SKU's in any line extension (i.e., Rx Black
   Teas) of any existing product for a period of at least one year. If after one year, CDDV
   or CDP delete any flavor referred to in this Paragraph, that flavor shall continue to be
   an Exclusive Product. New flavors will not be considered within the 80% rule stated in
   Section III.B above for the first year of the new flavor's distribution.

9. With respect to any new flavor, new package or new product line taken on by CDDV or
   CDP, each entity will purchase one trailer-load of such new flavor, new package or new
   product line within 30 days of its introduction into the Territories. In addition, each
   entity will offer a 30-day price promotion to the trade for such new flavor, new package
   or new product line as long as a margin of $1.00/case is maintained during the
   promotion.

10. CDDV and CDP will each run two 30-day incentive programs for salesmen each year.
    Each incentive program will provide up to a maximum incentive of $1.00 per case sold,
    the cost of which is to be shared equally by Hornell and the distributor. CDDV and
    CDP will each reach a mutual agreement with Hornell on the particular flavors,
    package sizes and product lines to be included in the incentive programs.

11. In recognition of the additional exceptions to exclusivity which are being codified in
    this agreement and the additional competition that has existed and will continue to exist
    between the parties with respect to retail accounts in the Territories, Paragraph 7.2 of
    the Agreements will be amended to define "Customer Information" to specifically
    include gross sales information by package and by channel, but not to include the
    names or addresses of customers.

12. The Settlement Agreement will contain a mechanism to have the Settlement Agreement
    approved by the Arbitration Panel and confirmed by the United States District Court for
    the Southern District of New York. ~~The settlement agreement shall contain~~ ~~a proper permitting either party to the Territories to seek~~ ~~default within thirty days after the notice of any~~ ~~default.~~

NOV 14 2008  11:24
NOV. 14. 2008  5.047B.
11/14/2008 17:31 FAX 18568616580        Executive Offices        NO. 710   P. 55

While I am confident that you and I can resolve this matter quickly and permanently, I cannot let these negotiations drag on or risk interfering with our preparation for the upcoming hearing dates. Accordingly, the terms above represent our best and final offer. If we cannot settle this case in this manner at this time, settlement negotiations will have to be put on hold indefinitely.

Sincerely,

Harold A. Honickman

Agreed _____ Date Nov 14 2006
        Harold A. Honickman

Agreed _____ Date Nov 14 2006
        Don Vultaggio

EXHIBIT B

paragraph 7
This paragraph shall not apply to Soho
natural soda and any vitamin enhanced
waters presented to CDDV and CPP
prior to the date of this letter.

paragraph 5
any package greater then 1 liter shall be
excluded from the distribution agreement

parag. 13
The settlement agreement shall include
a provision permitting either party to cure
any default within 60 days of receipt
of a written notice of any such default.

agreed _____ Howard H. _____    NOV 14
2006

agreed _____ Don V. _____    NOV 14
2006

EXHIBIT C

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (hereinafter the "Agreement") is made by and between Canada Dry Delaware Valley Bottling Company ("CDDV"), Canada Dry Potomac Corp. ("CDP") (collectively, the "Claimants") and Hornell Brewing Company, Inc. d/b/a Ferolito, Vultaggio & Sons ("Hornell"). This Agreement shall be deemed entered into as of the date of the signature of the last party or party representative to sign.

WHEREAS, Hornell executed an exclusive distribution agreement with CDDV on March 17, 1997, granting CDDV exclusive distribution rights in Bucks, Chester, Delaware, Montgomery and Philadelphia Counties in Pennsylvania (the "Pennsylvania Agreement");

WHEREAS, Hornell executed an exclusive distribution agreement with CDDV on March 17, 1997, granting CDDV exclusive distribution rights in Atlantic, Burlington, Camden, Cape May, Cumberland, Gloucester and Salem Counties in New Jersey, and Kent, New Castle and Sussex Counties in Delaware (the "New Jersey Agreement," referred to with the Pennsylvania Agreement as the "CDDV Agreements");

WHEREAS, Hornell executed an exclusive distribution agreement with CDP on December 23, 1998, granting CDP exclusive distribution rights in the District of Columbia and Anne Arundel, Baltimore, Baltimore City, Carroll, Frederick, Howard, Montgomery, and Prince George's Counties in Maryland (the "CDP Agreement");

WHEREAS, CDDV and CDP commenced an arbitration against Hornell by causing a demand for arbitration to be delivered to the American Arbitration Association on June 22, 2005, captioned *Canada Dry Delaware Valley Bottling Co. and Canada Dry Potomac Corp. v. Hornell Brewing Co., Inc. d/b/a/ Ferolito, Vultaggio & Sons,* AAA Case Number 13 181 01425 05 (the "Action");

WHEREAS, Hornell disputes the claims asserted by CDDV and CDP in the Action and has asserted defenses and a counterclaim; and

WHEREAS, CDDV, CDP and Hornell (collectively, the "Parties") desire to settle all claims that were or could have been asserted in the Action without incurring further litigation costs;

NOW, THEREFORE, in consideration of the mutual obligations and undertakings set forth herein, and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, and intending to be legally bound hereby, the undersigned hereby to agree as follows:

1.



2.    **Consent to Award:**  The parties agree to seek the Arbitration Panel's approval to conclude this Action by jointly submitting a copy of the Agreement to the Arbitration Panel as an attachment to a proposed Consent Award.

3.    **Confirmation:** Any party may file a petition to confirm the Consent Award. The Parties agree that the amount in controversy in the Action exceeds the sum or value of $75,000, exclusive of interest and costs, and that the preferred forum for confirmation is the United States District Court for the Southern District of New York. Should that court decline jurisdiction for any reason, the Consent Award may be confirmed in the Supreme Court of New York, New York County. The Parties agree not to object to such a petition on any ground, including but not

limited to jurisdiction, and the Parties further agree not to file a petition to vacate the Consent Award.

4.     **Mutual Releases:**  The Parties for good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, for themselves and each of their respective past, present and future officers, employees, directors, shareholders, agents, representatives, affiliates, partners, subsidiaries, successors and assigns, do hereby remise, release and discharge each other and hold each other and their respective past, present and future officers, employees, directors, shareholders, agents, representatives, affiliates, partners, subsidiaries, successors and assigns of any of them harmless for any and all claims relating to the CDDV Agreements and/or CDP Agreement that were or could have been asserted in the Action.

5.     **Confidentiality:**  The Parties agree that all documents collected during the course of discovery in the Action shall be kept confidential and shall not be disclosed or otherwise disseminated to any other person(s) or individual(s), except as the parties may be required by Order of Court or other governmental agency, and/or as the parties have agreed in the Confidentiality Agreement in this matter which, by its terms, survives the conclusion of the Action and requires all "Confidential Information" to be returned or destroyed.  To the extent any documents have been labeled "Attorneys' Eyes Only" and not "Confidential," the Parties agree that such documents should be deemed, "Confidential Information" and returned or destroyed as required by the Confidentiality Agreement.  Any party making any disclosure of evidence or documents permitted by the first sentence of this paragraph must provide to the opposing party's counsel notice that the evidence or documents will be disclosed at least five (5) business days before the date of any such disclosure.  The parties further agree that the terms and conditions of this Agreement shall be kept confidential and shall not be disclosed or otherwise disseminated to any other person(s) or individual(s) except as follows: (1) as may be necessary to

seek confirmation or enforcement of this Agreement, (2) as the parties may be required by Order of Court or other governmental agency, and/or (3) as may be needed by the parties' agents and professional advisors, including their auditors, accountants, and attorneys. Any party making any disclosure to its agents and professional advisors, including its auditors, accountants, and attorneys, as permitted by this paragraph, shall advise any such person or entity that the disclosure is subject to this confidentiality provision and shall obtain reasonable assurances from any such person or entity that it will not disclose any information covered by this confidentiality provision. It is further understood and agreed that the parties and their respective counsel shall not in any way publicize or give comment to any third parties, aside from those listed above, including any news or communication media (including, but not limited to, newspapers, magazines, radio, television, or Internet) regarding the terms and/or conditions of this Agreement or the evidence, claims or contentions regarding the Action.

6.    **Attorneys' Fees and Costs:** The Parties agree that the costs of litigation and attorneys' fees in the Action shall be borne by the respective party incurring such costs or attorneys' fees and that the arbitration costs shall be paid 50% by the Claimants and 50% by the Respondent.

7.    **Preparation of the Agreement and Construction:** Each Party has cooperated in the drafting and preparation of this Agreement. Therefore, the Agreement shall not be construed against any Party.

8.    **Final Understanding:** The Parties agree that the CDDV Agreements and the CDP Agreement remain in full force and effect according to their terms as amended by this Agreement ███████████. This writing constitutes the complete, final and entire understanding of the Parties hereto with respect to all matters relating to this Agreement. Other than the terms of this Agreement, terms of the CDDV Agreements and the CDP Agreement

which are not modified or amended by the terms of this Agreement ████████████, there are no other terms, covenants, conditions or representations.

9. Amendment: This Agreement may not be modified or changed orally, and may be amended only by an agreement in writing signed by the Parties.

10. Claims Arising out of the Enforcement of this Agreement: The Parties do not release each other from any claims, counterclaims, demands, causes of action and rights of action arising out of the enforcement of the terms of this Agreement or the Consent Award as confirmed by a court of competent jurisdiction. Prior to commencing any action relating to the enforcement of this Agreement or the Consent Award as confirmed, the party alleging breach must provide notice to the party alleged to have breached, specifying in sufficient detail the allegation and the basis therefor, and must provide no less than 60 days to cure the alleged breach.

11. Notices: Any notice or other transmission of information required under the provisions of this Agreement shall be made by overnight courier service, addressed as follows:

### For CDDV and/or CDP:

Canada Dry Delaware Valley Bottling Company, and/or
Canada Dry Potomac Corp.
8275 U.S. Route 130, Pennsauken, New Jersey 08110
Attn: Jeffrey Honickman

-and-

Dana B. Klinges, Esquire
Wolf, Block, Schorr & Solis-Cohen, LLP
1650 Arch Street, 22nd Floor
Philadelphia, PA 19103

### For Hornell Brewing Company, Inc.:

Hornell Brewing Company, Inc.
5 Dakota Drive, Lake Success
New York, NY 11042
Attn: _____

-and-

Howard Wolfson, Esquire
Morrison Cohen LLP
909 Third Avenue
New York, NY 10022

12.    Representations and Warranties:  The Parties further represent and warrant that:

    a.  they have not made any promise, representation or warranty, express or implied, not contained in this Agreement concerning the subject matter of this Agreement and the Parties acknowledge that they have not executed this Agreement in reliance upon any such promise, representation or warranty not contained in this Agreement;

    b.  they have not assigned the claims asserted in the Action to any other entity; and

    c.  each of the signatories for the Parties further represents that he or she is fully authorized to enter and execute this Agreement for and on behalf of the entity that he or she represents and that such entity has duly authorized him or her to sign on its behalf, as reflected on the attached signature page(s).

13.    **Choice of Law and Venue:**  The parties agree that this Agreement is governed by the laws of the State of New York.  Notwithstanding the arbitration provisions in the CDDV Agreements and the CDP Agreement, the venue for any action arising out of the interpretation, enforcement or a breach of this Agreement or the Consent Award as confirmed shall be the United States District Court for the Southern District of New York or, if the Consent Award is confirmed in state court pursuant to paragraph 3 above, the Supreme Court of New York, New York County.

14.    Counterparts:  This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original.  The executed signature pages from each counterpart may be joined together and attached to one such original, which shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed on the last day and year written below:

Canada Dry Delaware Valley Bottling Company, and
Canada Dry Potomac Corp.

By: Harold Honickman, Chairman

Date: November _____, 2006

Hornell Brewing Co., Inc.

By: Don Vultaggio,

Date: November _____, 2006

PHLi5484373.3/CAN039-151063                              -7-