UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
CANADA DRY DELAWARE VALLEY      :
BOTTLING COMPANY and CANADA     :
DRY POTOMAC CORPORATION,        :     07 Civ. 8037 (SHS)
                                :
         Petitioners,           :
                                :
         -against-              :
                                :
HORNELL BREWING CO., INC., D/B/A :
FEROLITO, VULTAGGIO & SONS,     :
                                :
         Respondent.            :
------------------------------------------------------- x

## DECLARATION OF DANA KLINGES

I, Dana Klinges, declare and affirm under the penalties of perjury that:

1. I am a lawyer at WolfBlock LLP, attorneys for Canada Dry Delaware Valley Bottling Company ("CDDV") and Canada Dry Potomac Corporation ("CDP").

2. I am authorized to make the following statements on behalf of CDDV and CDP.

3. I submit this Declaration in support of CDDV and CDP's Reply Memorandum in Support of their Motion to Compel Compliance with this Court's Judgment and for Contempt against Hornell Brewing Co., Inc. ("Hornell").

4. A Consent Award incorporating the terms of the Settlement Agreement between CDDV, CDP and Hornell was entered on August 20, 2007.

5. The Consent Award was confirmed by Order of this Court on September 28, 2007, and, pursuant to that Order, the Consent Award was entered as a Judgment on October 1, 2007.

6. The Consent Award states that the parties are bound by the following three documents:

    a. The signed Letter Agreement dated November 14, 2006;

    b. The signed three paragraph handwritten document dated November 14, 2006; and

    c. The unsigned "Settlement Agreement and Mutual Release" dated November __, 2006 [blank in original], except for (a) Paragraph 1 (Amendments to the Distribution Agreement) and (b) "and the Amendments" in the first line and in the sixth line of paragraph 8 (Final Understanding), which are stricken.

A true and correct copy of the Letter Agreement and handwritten amendments is attached as Exhibit 1. A true and correct copy of the unsigned "Settlement Agreement and Mutual Release" is attached as Exhibit 2.

7. The Consent Award does not explicitly incorporate the Distribution Agreements.

8. The clear intent of the parties was that any dispute arising from the parties' new business terms would be brought to this Court for interpretation and enforcement. *See* Exhibit 2 at ¶ 13.

9. The parties intended a swift and efficient enforcement procedure, in contrast to the original arbitration in which it took more than four months just to empanel the arbitrators.

10. After the parties agreed to the business terms necessary to resolve the parties' disputes, CDDV and CDP argued that the parties would be better served by more formal documents, given the piecemeal and handwritten nature of the agreement.

11. The Consent Award was meant to govern the future business dealings between the parties, as evidenced by Hornell's Motion to Enforce the Settlement, which was made at the

conclusion of the arbitration. A true and correct copy of Hornell's Memorandum of Law in support of its Motion to Enforce the Settlement is attached as Exhibit 3.

12. Hornell prevailed on its Motion to Enforce the Settlement.

13. The impetus for the prior arbitration was Hornell's sales of two single-serve *plastic* packages that Hornell was selling into Petitioners' markets.

14. In the arbitration, Hornell asserted that it could not unravel many of the direct distribution arrangements it had made with various chain accounts over a period of time.

15. Hornell's sales of new single-serve *plastic* packages are neither new nor independent of the provisions of the Consent Award.

16. The Settlement Agreement between the parties provides for a 60-day period to cure any default of the Settlement Agreement. *See* Exhibit 2 at ¶ 10.

17. I sent three notices of default for the improper sales of the new 16 and 20 ounce plastic packages in Petitioners' Exclusive Territories.

18. Not once did Hornell claim that these default notices were improper under the Consent Award's terms.

19. Instead, Hornell responded to all of the notices in a single letter on June 4, 2008, asserting that its actions were justified under the Consent Award.

20. Hornell's present assertion that CDDV and CDP have somehow violated the Consent Award by failing to order a trailer load of each new package within 30 days is not ripe for review.

21. To assert a claim for breach, Hornell would have to serve notice and provide an opportunity to cure, as set forth in the Consent Award. *See* Exhibit 2 at ¶¶ 10-11.

22.     The trailer load issue is irrelevant, moreover, because the Consent Award does not condition exclusivity on compliance with this provision.  *See* Exhibit 1 at ¶ 9.

23.     Also, there are no provisions anywhere — not in the Distribution Agreements or the Consent Award — permitting Hornell to dictate the distributor's resale price, and there are no provisions permitting Hornell to sell plastic packages directly if the parties cannot agree on that price.

24.     This issue was thoroughly litigated in the original arbitration, but Hornell was unable to obtain any concessions from Petitioners on this issue in the Settlement Agreement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 6, 2008.

_____
Dana Klinges