# EXHIBIT 1

NOV. 14. 2006  5:33PM
11/14/2006 17:29 FAX 18586614580          Executive Offices                    NO. 720    P. 02

November 14, 2006

VIA FAX: 212-735-3708

Mr. Don Vultaggio
Hornell Brewing Co., Inc.
5 Dakota Drive, Suite 205
Lake Success, NY 11042

Dear Don:

I am writing in response to David Menashi's letter to Lewis Gantman, dated November 10, 2006. I am sure we both understand the value of settlement -- both in the avoidance of potential liability and in our ability to craft our own resolution. Accordingly, we are not interested in settling this matter by submitting a host of issues for the Panel to decide. If we are going to resolve this case amicably, let us resolve it by our own terms.

We have revised the terms from my November 3, 2006 letter, as follows:

1. Hornell will agree to the deletion of that portion of Paragraph 2.4 of the distribution agreements between the parties (the "Agreements") beginning with the phrase, "provided, however, that if in the Manufacturer's good faith...." and continuing through the remainder of the paragraph. The deleted language will be replaced by language stating that CDDV and/or CDP will give Hornell written notice of transshipment. Upon the receipt of written notice, both parties would have a period of 60 days to determine if they were responsible for the transshipment problem and eliminate it. If after the 60-day cure period the transshipment continues, then CDDV/CDP would give Hornell written notice of the continuation of the transshipment, and both parties would use their "best efforts" to eliminate the transshipment problem.

2. In the absence of a mutually agreeable Business Plan pursuant to Paragraph 10 of the Agreements, Paragraph 2.1 of the Agreements will require CDDV and CDP to diligently and aggressively promote and actively solicit the sale and distribution of Exclusive Products in good faith and in a manner consistent with the terms of the Agreements as amended by the Settlement Agreement, including the distribution goals set forth in paragraphs 6, 7 and 8.

3. Hornell shall be permitted to distribute the following specific packages of hot fill Exclusive Products to the following specific customers within the Territories on a direct basis:

NOV-14-2006  11:23
NOV. 19. 2006  9:33PM
11/14/2006 17:29 FAX 18566616560    Executive Offices    P.03

a. Drug Stores:

    CVS, Walgreen's and Brook's/Eckerd/Rite Aid
    Full Product Line

b. Club Stores:

    Sam's Club, BJ's and Costco
    16 ounce glass bottles and 15.5 ounce cans

c. Mass Merchandisers:

    K Mart and Target
    16 and 20 ounce glass bottles and 23.5 ounce Big Cans

    Walmart
    16 and 20 ounce glass bottles

d. Aldi's:

    Full Product Line

e. Convenience Stores:

    Sheetz
    16 and 20 ounce glass bottles

    Cumberland Farms and High's
    16 and 20 ounce glass bottles and 23.5 ounce Big Cans

f. Supermarkets:

    Shop Rite, Pathmark, Super Fresh, Stop & Shop, Safeway and Genuardi's
    Products equal or less than 12 ounce and greater than one liter

    For Safeway and Genuardi's only, Hornell shall be permitted to sell the
    Arizona Energy Drink in the Green Tea, Diet Green Tea and Green Tea
    Pomegranate Flavors in 16 ounce cans.

g. Military:

    Full Product Line. There shall be no distribution of Products to any of the
    following customers except to the extent Hornell can demonstrate a
    history of sales: Walter Reed Hospital, Bowling Air Force Base, Quantico
    Marine Base, Fort Meade, Naval Academy, Fort Belvoir, Fort Myer, Fort

McNair and Dover Air Force Base. To the extent CDDV or CDP obtain evidence of improper sales to any of these bases, such evidence will be forwarded to Hornell immediately.

h. Food Service:

Syrup may be sold through a commissary system to any national restaurant chain. In addition, Hornell may sell its full product line to McDonald's, Burger King and Wendy's through a self-distribution commissary system, which must be wholly-owned or controlled by such restaurant customer, must distribute products exclusively to such restaurant customer, and must operate all of its outlets under its trademark.

i. Vending Machine Accounts:

Sales to vending machine accounts will include only packages which are permanently marked "For vending only and not for resale" and will not include a UPC on the package. CDDV/CDP will provide Hornell with written notice of "vending packages" that appeared in the market for resale within 60 days of its becoming aware of the problem. Hornell would have 60 days to cure this problem by eliminating the sales of the "vending packages" to the appropriate customers.

4. The exceptions to exclusivity specified in Paragraph 3 above relating to convenience stores and supermarkets only apply to existing stores of those customers and new stores of those customers. However, the exceptions shall not apply if the new stores were opened pursuant to an acquisition or business combination with an existing store chain that has at least 10 stores.

5. The 16 ounce "Fresh Choice" product will be a Non-Exclusive Product in the CDDV and CDP territories if Hornell and the product meet and enforce all of the following conditions: 1) the product is produced without preservatives in an ultra-high temperature pasteurization process; 2) the product requires refrigeration at the manufacturer, distributor and retailer levels; 3) Hornell informs its customers that the product must be sold in the dairy refrigerated section of the retail store; and 4) the product is not sold in the CDDV and CDP coolers. Any packages ~~~~~~~~~~~~~~~

6. CDDV and CDP will agree to distribute enough Arizona SKU's to represent at least 80% of the annual DSD sales in the Northeastern part of the United States from Virginia to Maine for each of the following package sizes — 16 ounce bottle, 20 ounce bottle, and 23.5 ounce "Big Can". Hornell will provide an annual report certifying SKU sales in the Northeastern part of the United States from Virginia to Maine to verify the SKU distribution requirements. The SKU's will be selected jointly by CDDV/CDP and Arizona to reflect the most appropriate products for the marketplace.

7. Introduction of new product lines: If any new product bears the Arizona trademark, or the trade dress of any new product is substantially similar to that of an Exclusive Product, the new product must be offered to CDDV and CDP on an exclusive basis and on the same terms and conditions as other Exclusive Products. If such product is accepted, then the product shall be added to Schedule A-1. If Hornell offers such new product line and CDDV and/or CDP elects not to carry it, then this new product line will be added to Schedule A-2 as a Non-Exclusive Product. This Paragraph *[handwritten edits]* to *[handwritten]* sales and *[handwritten]*.

8. Introduction of new flavors: CDDV and CDP will agree to present any new flavor to at least 40% of its active customers in the "All Other Market" category, as defined by CDDV and CDP, as will be evidenced by a written confirmation signed by a representative of each customer. CDDV and CDP will agree to distribute all new flavors of any existing product line for at least one year, unless CDDV and/or CDP have a contractual prohibition on such offering. CDDV and CDP will also agree to distribute a minimum of 50% of all new SKU's in any line extension (i.e., Rx Black Teas) of any existing product for a period of at least one year. If after one year, CDDV or CDP delete any flavor referred to in this Paragraph, that flavor shall continue to be an Exclusive Product. New flavors will not be considered within the 80% rule stated in Section III.B above for the first year of the new flavor's distribution.

9. With respect to any new flavor, new package or new product line taken on by CDDV or CDP, each entity will purchase one trailer-load of such new flavor, new package or new product line within 30 days of its introduction into the Territories. In addition, each entity will offer a 30-day price promotion to the trade for such new flavor, new package or new product line so long as a margin of $1.00/case is maintained during the promotion.

10. CDDV and CDP will each run two 30-day incentive programs for salesmen each year. Each incentive program will provide up to a maximum incentive of $1.00 per case sold, the cost of which is to be shared equally by Hornell and the distributor. CDDV and CDP will each reach a mutual agreement with Hornell on the particular flavors, package sizes and product lines to be included in the incentive programs.

11. In recognition of the additional exceptions to exclusivity which are being codified in this agreement and the additional competition that has existed and will continue to exist between the parties with respect to retail accounts in the Territories, Paragraph 7.2 of the Agreements will be amended to define "Customer Information" to specifically include gross sales information by package and by channel, but not to include the names or addresses of customers.

12. The Settlement Agreement will contain a mechanism to have the Settlement Agreement approved by the Arbitration Panel and confirmed by the United States District Court for the Southern District of New York. The settlement agreement shall include *[handwritten text continues]* a *[handwritten]* pending either party the opportunity to cure any default within sixty (60) days *[handwritten]* of written notice of any default.



NOV 14 2006 11:24
NOV. 4 2006 7:34PM
11/14/2006 17:31 FAX 18568516380    Executive Offices    NO. 720    P. 5

While I am confident that you and I can resolve this matter quickly and permanently, I cannot let these negotiations drag on or risk interfering with our preparation for the upcoming hearing dates. Accordingly, the terms above represent our best and final offer. If we cannot settle this case in this manner at this time, settlement negotiations will have to be put on hold indefinitely.

Sincerely,

Harold A. Honickman

Agreed _____ Date Nov 14 2006
Harold A. Honickman

Agreed _____ Date Nov 14 2006
Don Vultaggio

TOTAL P.05

Paragraph 7

This paragraph shall not apply to Soho natural soda and any vitamin enhanced waters presented to CDDV and CPP prior to the date of this letter.

paragraph 5

Any package greater than 1 liter shall be excluded from the distribution agreement

parag. 13

The settlement agreement shall include a provision permitting either party to cure any default within 60 days of receipt of a written notice of any such default.

agreed  _Harold H._____  NOV 14 2006

agreed  _____  Don V_____  NOV 14 2006

TOTAL P.07